**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| TOMMY SCOTT, | * | |
| Petitioner, | * | |
| VS. | * | CASE NO. 4:05-CV-14 (CDL) |
| | | 28 U.S.C. § 2254 |
| KEVIN ROBERTS, Warden and | * | |
| STEPHEN UPTON, Warden | | |
| | * | |
| Respondent. | | |
| | * | |

## **REPORT AND RECOMMENDATION**

On May 13, 1999, Petitioner Tommy Scott was convicted in the Muscogee County Superior Court of the offenses of Malice Murder, Kidnaping, Aggravated Assault, and Possession of a Firearm in the Commission of a Felony. Petitioner was sentenced to serve life in prison for the murder, a five-year term for the gun possession charge, plus two consecutive ten-year terms for kidnaping and aggravated assault.

Petitioner filed a motion for new trial on June 11, 1999, which was denied on August 11, 2000. Petitioner then filed a direct appeal to the Georgia Supreme Court on September 11, 2000, wherein his convictions were affirmed on June 4, 2001, and upon reconsideration on June 27, 2001. Petitioner then filed a state habeas corpus petition on July, 24, 2001,which was denied on June 28, 2004. Petitioner duly filed with the Georgia Supreme Court a notice of appeal and a certificate of probable cause to appeal, which was denied on January 24, 2005. Following the decision of the State's highest court, Petitioner filed, on

February 14, 2005, in this Court, a 28 U.S.C. § 2254 Motion For Habeas Corpus Review. (Doc. 2).  In his petition, the still relevant issue raised by Petitioner Scott was his Claim 1(c) that:

> Appellate Counsel failed to enumerate as error on appeal trial counsel's ineffectiveness by failing to make timely and adequate objection to the hearsay evidence of the prosecutor from Johnerson Adams implicating petitioner in precise numbers.

In its decision on Petitioner Scott's § 2254 petition, this court affirmed the Superior Court's finding that defense counsel's performance was not deficient. (Doc. 12, 16). However, on Petitioner Scott's appeal of that decision, the United States Court of Appeals for the Eleventh Circuit disagreed.  (Doc. 34-2 at 5).  The Circuit Court concluded:

> In this case, unlike in *Bruton, Richardson,* and *Gray,* the trial court did not issue a limiting instruction, and, therefore, the jury was free to consider the witness's testimony regarding Morris's admission as evidence of Scott's guilt.  The instant case is comparable to *Gray* because even though Morris did not specifically identify Scott in his statement to the witness, the clear implication was that he was referring to Scott when he said that there were two triggermen.  The implication was the three named defendants who were tried together were responsible for the victim's death.  Given the prejudicial nature of the testimony and the fact Scott's trial counsel admitted at one point the decision not to object was not a strategic one, the state court's conclusion that Scott's counsel was not ineffective for failing to object to it was an unreasonable application of *Strickland.* Therefore, the state court and the district court denied relief based on an unreasonable applicable of the first prong of the *Strickland* test and never reached the second prong. Accordingly, we vacate the district court's order and remand for a determination in the first instance of whether Scott's claim

satisfies the second prong of the *Strickland* test.[1]

*Id.* at 9, 10. After further proceedings, the United States Court of Appeals for the Eleventh Circuit found that:

> [S]ubstantial portions of the state trial record were missing. The State has now supplemented the record to include the transcript of the entire trial in state court. The district court, however, has not had the opportunity to review the full record. Thus, we remand the case to give the district court the opportunity to review the full record in the first instance. In its review of the full record and application of the prejudice prong of *Strickland,* the district court should determine "whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *See Strickland,* 104 S.Ct. at 2068-69.

(Doc. 65 at 2, 3). The Circuit Court also indicated that the district court should determine "what effect the inadmissable statements had on the jury's verdict." *Id.* at 3 n.1. The holding of the United States Court of Appeals for the Eleventh Circuit, that Petitioner's counsel *was* ineffective for not objecting to the hearsay testimony of Johnerson Adams, became the *law of the case*[2] on November 30, 2006, when the Circuit Court issued its first

---

[1] The *Strickland* test is that a successful claim of ineffective assistance of counsel requires a showing that (1) the attorney's conduct fell below an objective standard of reasonableness, and (2) the attorney's deficient conduct actually prejudiced the defendant's case. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).

[2] The United States Court of Appeals for the Eleventh Circuit, in *United States v. Amedeo,* 487 F.3d 823, 829, 830 (11th Cir. May 24, 2007), defined the *Law of the Case Doctrine,* as follows:

> The law of the case doctrine, self-imposed by the courts, operates to create efficiency, finality, and obedience within the judicial system so that an appellate decision binds all subsequent proceedings in the same case**.** ... The mandate rule is simply an application of the law of the case doctrine to a specific set of facts. Accordingly, when acting under an appellate court's mandate a district court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been mandated. (Citations omitted).

decision. Therefore, Petitioner's Objection to the Government being allowed to relitigate the deficiency prong of the *Strickland* test (Doc. 69) is sustained. The Circuit Court's finding that Scott's counsel was ineffective in satisfaction of the first prong of the *Strickland* test cancels any presumption of effectiveness. The district court must follow the mandate pronounced in the Circuit Court's remand and move on to determine from the entire record whether Scott's attorney's ineffectiveness satisfies the second or prejudice prong of the *Strickland* test, i.e., whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.

> The Respondent argues in its Supplemental Brief (Doc. 70) that:
>
>> Petitioner cannot show that, but for the hearsay testimony, there is a reasonable probability that the trial result would have been different. ... At trial, witness Terrell Mars heard Petitioner discussing with the victim the sum of "$31,000.00." (Resp. Ex.2, pp. 467). Another witness heard the parties mention something about "Miami" and "Florida." (Resp. Ex. 2, pp. 453, 474). On the same day, Mars saw Petitioner and the victim at a house on Marion Street in Columbus, Georgia, where drugs were knowingly sold. (Resp.Ex. 2, pp. 468, 470, 472). Mars informed law enforcement that he saw Petitioner hit the victim in the head with a silver handgun at that residence, stuff the victim into the truck of a car, and leave the area; however, he [Mars] denied making this statement at trial. (Resp. Ex. 2, pp. 479, 532, 578); State's Ex. 17; Defendant's Ex. 1; Resp.Ex. 2, p. 479). Mars did testify that the last time he saw the victim alive was at the residence on Marion Street. (Resp. Ex. 2, p. 475). The next day the victim was found dead from multiple gun shot wounds.

*Id.* at 5, 6. Respondent continues to argue that even if Johnerson Adams' testimony [which the Court of Appeals for the Eleventh Circuit has found inadmissible and violative of *Bruton*]

is excluded, there is *ample evidence,* independent of Adams' testimony, to show Petitioner's involvement in the murder, as recounted above.  Thus, Respondent submits that the testimony of Terrell Mars, and inferences therefrom, is *ample* to establish the guilt of Petitioner Scott to the jury's satisfaction beyond a reasonable doubt and overcomes the *Bruton* error in the admission of the hearsay testimony of Johnerson Adams even in the absence of  curative jury instructions.  In fact, Respondent submits that this evidence is *sufficient* to overcome any possible harm that may have come from the indirect "two trigger men" comment.  *Id.* at 8.  Respondent relies on the authority of *Grossman v. McDonough,* 466 F.3d 1325, 1338-39 (11th Cir. 2006).

## Absent the Error

The  United States Court of Appeals for the Eleventh Circuit observed in its decision of November 30, 2006 (Doc. 34-2 at 9), that:

> [T]he trial court did not issue a limiting instruction and, therefore, the jury was free to consider the witness' testimony regarding Morris's admission as evidence of Scott's guilt. ... [E]ven though Morris did not specifically identify Scott in his statement to the witness, the clear implication was that he was referring to Scott when he said that there were two triggermen.

Moreover, the *Bruton* error was compounded and the prejudiced prong of *Strickland* approached, when the prosecutor argued, without restriction, in closing, as follows:

> Johnerson Adams came in and testified about the statement made by Herman Morris.  The law says if he is the one that made it, even if he had named every individual there, that statement had to be used against him.  Now, if Mr. Wilson had asked him, was his client there, then he could have said whether he was or was not.  But for him to get up and argue that because

> Johnerson Adams did not say anything about his client, that being his client there (indicating [one of the three defendants sitting at defense table]), it's not correct and it's not proper because the law will not allow us to use the statement made by Herman Morris that may implicate others unless those parties were part of that statement. So, don't say, don't think, because Johnerson Adams didn't name the other individuals, that that means more than what it means. It only means that he can say what the person who made that statement said. It doesn't mean anymore. And for him to say because Johnerson Adams did not say anything about his client, his client wasn't there, that is not correct, and that is not proper for the law. ... So many times when a witness gets up there and testifies, it's no complete mystery, but none of them asked them any questions.

(Trial Transcript, Volume III at 398, 399). State Prosecutor Whitaker was clearly urging the jury to consider the inadmissable hearsay testimony of Johnerson Adams and consider that the statement Adams attributed to Defendant Morris should be interpreted as also implicating Co-defendant Petitioner Scott. The trial court gave no curative nstructions to the contrary.

Respondent's reliance on *Grossman v. McDonough,* 466 F.3d 1325, 1338-39 (11th Cir. 2006), is questionable, inasmuch as *Grossman* involved the erroneous admission of co-defendant Taylor's statement implicating defendant Grossman, but with the trial court instructing the jury to disregard that statement as to Grossman, and a finding of overwhelming evidence of Grossman's guilt in inculpatory statements made by Grossman himself. *Id.* at 1338. That is not Petitioner Scott's case. The evidence, absent the error, against Petitioner Scott is found only in the testimony of Terrell Mars, who is found to have made at least three conflicting statements, only the second of which inculpates Scott.

Mars testified on cross examination that he had given Detective Tyner a statement on

October 30, 1998, that he had not seen anyone argue with or do anything harmful to Roderick Davis, but that he changed his statement on November 3rd when Detective Tyner said he was lying and that his statement did not agree with the statement Tommy Carter had made. (Trial Transcript I at 156). Mars further testified that he did not give the second statement on November 3rd to Detective Tyner, until he had been arrested and told that he would be charged as a conspirator in the murder of Roderick Davis. (Trial Transcript I at 161, 163, 164). Mars recanted his second statement (the one which had incriminated Petitioner Scott), both at trial and before, in an affidavit obtained by Attorney Wright on December 3, 1998. (TT. III, Defendant. Ex. 1). The affidavit, verified by Mars as, "That's true. Exactly", in his trial testimony (TT. I at 158), contained the following:

> That on the morning that Roderick Davis was killed, I never saw Tommy Scott with a pistol and I did not see him hit Roderick Davis on the back of the head and push him into the trunk of an automobile. That myself and Tommy Carter did not follow any automobile in which Tommy Scott was a passenger, to Columbus Square Mall on the morning that Roderick Davis was killed.

None of the foregoing conflicting evidence constitutes *overwhelming* evidence of guilt, considered in the absence of the inadmissable hearsay statement of Johnerson Adams and the *Bruton* error related thereto, by the standard set out in *Grossman v. McDonough,* 466 F.3d 1325, 1338-39 (11th Cir. 2006), or any other confrontation right authority. Moreover, Terrell Mars was shown to be in jail under pending state and federal felony charges at the time of his testimony. (TT. 1 at 164). There was no positive element lending credibility to his conflicting

testimony. In view of the full record, there is no way that this court can determine that the *Bruton* error was harmless and had no substantial or prejudicial effect or influence in the determination of the jury's verdict.

**WHEREFORE, IT IS RECOMMENDED** that Petitioner's § 2254 Motion for Habeas Corpus relief be granted to the effect that he be granted a new trial. Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner and/or the Respondent may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN TEN (10) DAYS after being served with a copy hereof.

**SO RECOMMENDED** this 20th day of March 2009.

        **S/ G. MALLON FAIRCLOTH**
        **UNITED STATES MAGISTRATE JUDGE**